UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ORIGINS TECH, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>OAK EQUITY HOLDINGS II, LLC, a California limited liability company; LE ERIK MURRAY, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY AND MOTION TO STAY RESPONSE DEADLINES (DOC. NO. 8)**<br><br>Case No. 2:23-cv-00326<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Origins Tech, Inc.'s Motion for Leave to Conduct Jurisdictional Discovery and Motion to Stay Response Deadlines for Motion to Dismiss.[1] Origins filed suit against Defendants Oak Equity Holdings II, LLC, and Le Erik Murray on March 23, 2023, in Utah State court.[2] The case was subsequently removed to federal court.[3] Defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (and other grounds), alleging Oak Equity and Mr. Murray lack sufficient minimum contacts with the State of Utah for this court to exercise personal jurisdiction over them.[4] This

---

[1] ("Mot.," Doc. No. 8.)

[2] (Compl., Doc. No. 1-2.)

[3] (*See* Notice of Removal, Doc. No. 1.)

[4] (Mot. to Dismiss for (1) Lack of Personal Jurisdiction, (2) Improper Venue, and (3) Failure to State a Claim ("MTD") 15–18, Doc. No. 6.)

1

motion remains pending. Rather than filing a response to Defendants' motion to dismiss, Origins filed a motion seeking ninety days of jurisdictional discovery because it lacks sufficient evidence to properly address the personal jurisdiction issues raised in the motion to dismiss.[5] Origins also seeks a stay of its deadline to respond to Defendants' motion to dismiss.[6] Defendants oppose the motion, arguing Origins' "lengthy personal jurisdictional discovery" request is not warranted.[7]

Where pertinent facts bearing on the question of personal jurisdiction regarding Oak Equity and Mr. Murray are controverted and a better showing is needed, Origins' motion is granted to the extent it seeks leave to conduct jurisdictional discovery. However, the motion is denied as moot to the extent it seeks to stay Origins' deadline for responding to Defendants' motion to dismiss because the court already extended this deadline.[8]

## BACKGROUND

Origins filed its complaint on March 23, 2023, alleging four causes of action against Oak Equity: (1) promissory estoppel, (2) contract implied in fact, (3) breach of contract, and (4) breach of the implied covenant of good faith and fair dealing.[9] Origins also brings a tortious interference claim against Mr. Murray.[10] In its complaint, Origins alleges the court has

---

[5] (Mot. 2, Doc. No. 8.)

[6] (*Id.* at 2.)

[7] (Defs.' Resp. to Pl.'s Mot. for Leave to Conduct Jurisdictional Disc. ("Opp'n") 2, Doc. No. 12.)

[8] (*See* Docket Text Order, Doc. No. 11 ("Plaintiff's deadline to respond to the 6 Motion to Dismiss is extended until the later of fourteen days after denial of the 8 Motion for Jurisdictional Discovery or fourteen days after the completion of jurisdictional discovery in the event that motion is granted.").)

[9] (*See* Compl. ¶¶ 36–67, Doc. No. 1-2.)

[10] (*See id.* ¶¶ 68–74.)

2

"personal jurisdiction over Defendants pursuant to Section 9 of the governing *Purchase Option Agreement* which dictates that [Origins] and Defendants 'submit to the jurisdiction and venue of, the appropriate state or federal court for the district encompassing [Origins'] principal place of business.'"[11] Origins alleges it is a "Delaware business with its principal place of business in Salt Lake County, Utah."[12] With respect to Mr. Murray, Origins alleges this court "has personal jurisdiction over Murray because he knowingly directed harmful activity, and caused harm, to [Origins] in Utah."[13]

Defendants filed a motion to dismiss, arguing neither Oak Equity nor Mr. Murray is subject to personal jurisdiction in the State of Utah.[14] With respect to Oak Equity, Defendants contend the company is not subject to personal jurisdiction because it is an LLC with a principal place of business in California, all three LLC members are California residents, and Oak Equity does not own property or do business in Utah.[15] They argue the "only contact [Oak Equity] has with Utah is through the Purchase Option Agreement with Utah-based company Origins Tech,"

---

[11] (*Id.* ¶ 5 (emphasis in original).) The provision reads in its entirety:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware. The parties agree that any action brought by either party to interpret or enforce any provision of this Agreement shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, the appropriate state or federal court for the district encompassing [Origins'] principal place of business.

(Ex. 1 to MTD, Purchase Option Agreement ¶ 9, Doc. No. 6-1.)

[12] (Compl. ¶ 1, Doc. No. 1-2.)

[13] (*Id.* ¶ 6); *see also* Utah Code. Ann. § 78B-3-205(3) (establishing personal jurisdiction for anyone causing "injury within this state whether tortious or by breach of warranty").

[14] (MTD 15–18, Doc. No. 6.)

[15] (*Id.* at 18.)

which it entered into in April 2021.[16] But even then, Defendants contend the agreement "does not involve any business venture in Utah."[17] Defendants do not contest that the Purchase Option Agreement includes a forum selection clause; they argue the clause does not apply where Origins has not alleged a breach of the agreement so as to trigger that provision.[18]

With respect to Mr. Murray, Defendants argue his "lack of Utah contacts negates general jurisdiction."[19] They contend Mr. Murray is domiciled in California, has never resided in Utah, does not own property in Utah, and has never operated, conducted, or engaged in business in Utah.[20] They contend his only contacts with Utah are two short trips to "Utah ski areas."[21] The first trip was for a family vacation in February 2021.[22] The second trip was for an Origins shareholder meeting in November 2021.[23] Defendants likewise argue the court lacks specific personal jurisdiction over Mr. Murray because "nothing in Origins' [] complaint suggests that Mr. Murray has any connection with Utah, or did anything that had any effect in Utah."[24] Again, they contend the primary basis for suing Mr. Murray in Utah is the forum selection clause contained in the Purchase Option Agreement—which they argue does not apply, for the same

---

[16] (*Id.*)

[17] (*Id.*)

[18] (*Id.*)

[19] (*Id.* at 16.)

[20] (*Id.* at 16–17.)

[21] (*Id.* at 17.)

[22] (*Id.*; *see also* Ex. 3 to MTD, Decl. of Le Erik Murray ("Murray Decl.") ¶ 6, Doc. No. 6-3.)

[23] (MTD 17, Doc. No. 6; *see also* Ex. 3 to MTD, Murray Decl. ¶ 15, Doc. No. 6-3.)

[24] (MTD 17, Doc. No. 6.)

reasons stated above.[25] Defendants submitted a declaration from Mr. Murray supporting their positions regarding jurisdiction with respect to both Oak Equity and Mr. Murray.[26]

Origins filed the instant motion in response to the above arguments, seeking leave to conduct ninety days of jurisdictional discovery.[27] Origins contends it lacks sufficient evidence to properly address the personal jurisdiction arguments raised in the motion to dismiss.[28] Origins submitted documents challenging the veracity of Mr. Murray's lack of Utah contacts.[29] But Origins contends "without discovery, [it] is unable to present sufficient evidence to the court to establish to what extent the [Purchase Option Agreement] and [other] contact[s] pertain[] to [Mr.] Murray as an officer and owner of [Oak Equity] (thereby demonstrating sufficient contact

---

[25] (*Id.*)

[26] (*See* Ex. 3 to MTD, Murray Decl. ¶¶ 2–6, 11, 13, 15–17, 21, Doc. No. 6-3 (Mr. Murray); *id.* ¶¶ 8–11, 17–18 (Oak Equity).)

[27] (*See generally* Mot., Doc. No. 8.)

[28] (*Id.* at 2.)

[29] (*See* Ex. A to Reply, Consulting Agreement between Origins and Melrose Associates LLC, Doc. No. 13-1 (identifying Origins as a Utah company, providing "[t]his Agreement shall be governed by and construed with the laws of the State of Utah . . . all disputes hereunder shall be resolved solely and exclusively in the state or federal courts in Salt Lake County, Utah," and signed by Mr. Murray); Ex. C to Reply, Expansion Strategy Overview, Doc. No. 13-3 (identifying Mr. Murray as Origins' Chief Strategy Officer); Ex. D to Reply, Consulting Agreement between Origins and OI Funds LLC, Doc. No. 13-4 (identifying Origins as a Utah company and providing "[t]his Agreement shall be governed by and construed with the laws of the State of Utah . . . all disputes hereunder shall be resolved solely and exclusively in the state or federal courts in Salt Lake County, Utah"); Ex. E to Reply, Emails between Erik Murray and Mark Schuessler (Sept. 13, 2021), Doc. No. 13-5) (identifying Mr. Murray as "Managing Partner" for OI Funds).)

with Utah by [Oak Equity]), or [Mr.] Murray as an individual (thereby demonstrating sufficient contact with Utah by [Mr.] Murray)."[30]

## LEGAL STANDARDS

"As with other types of discovery, district courts possess discretion to permit jurisdictional discovery."[31] Indeed, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."[32] Jurisdictional discovery is appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[33]

## DISCUSSION

Origins contends it lacks sufficient evidence to properly address the personal jurisdiction arguments raised in the motion to dismiss and seeks leave to conduct ninety days of jurisdictional discovery.[34] Specifically, Origins seeks jurisdictional discovery across four categories. However, Defendants' argument that the court should dismiss the complaint rather than decide the instant motion is addressed first.

---

[30] (Reply 8, Doc. No. 13.)

[31] *Finn v. Great Plains Lending, LLC*, 689 F. App'x 608, 610 (10th Cir. 2017) (unpublished) (citing *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1326 (10th Cir. 2002)).

[32] *B&D Dental Corp. v. KOD Co.*, No. 2:13-cv-236, 2013 U.S. Dist. LEXIS 151749, at *8 (D. Utah Oct. 22, 2013) (unpublished) (alteration in original) (quoting *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)).

[33] *Finn*, 689 F. App'x at 610; *see also B&D Dental Corp.*, 2013 U.S. Dist. LEXIS 151749, at *8 ("This Court has discretion to order jurisdictional discovery where jurisdictional facts are in dispute or more factual basis is needed.")

[34] (Mot. 2, Doc. No. 8.)

In their opposition, Defendants argue the court should not waste judicial resources on jurisdictional discovery when Origins' claims can be dismissed for failure to state a claim.[35] Defendants ask the court to consider the arguments in their motion to dismiss for failure to state a claim before considering personal jurisdiction issues.[36] But courts must "resolve challenges to personal jurisdiction before addressing arguments related to the merits of the case."[37] This is because the "absence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties."[38] Accordingly, Defendants' argument is unavailing. Defendants' jurisdictional challenges must be resolved before the court can consider whether Origins has failed to state a claim.

Moving on to the specific categories of jurisdictional discovery sought, Origins seeks:

1. Transactional documents and communications between Mr. Murray and his partners related to their deal with Origins.[39] Origins contends this is "likely to reveal corporate records, organization documents, governance documents, and communication between Mr. Murray and his partners" demonstrating (A) an understanding that by joining Origins, they were intentionally doing business with a Utah company, and (B) an intent to vest Mr. Murray or other partners with agency authority to act on behalf of Oak

---

[35] (Opp'n 2–3, Doc. No. 12; *see also* MTD 7–15, Doc. No. 6); Fed. R. Civ. P. 12(b)(6).

[36] (Opp'n 2–3, Doc. No. 12); *see also* Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(b)(2).

[37] *Salt Lake City Corp. v. Sekisui SPR Americas, LLC*, No. 2:17-cv-01095, 2018 U.S. Dist. LEXIS 168489, at *4 (D. Utah Sept. 28, 2018) (unpublished) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998)).

[38] *Gonzales v. Crosby*, 545 U.S. 524, 534 (2005).

[39] (Mot. 3, Doc. No. 8; Reply 9, Doc. No. 13.)

      Equity in conducting business with Origins in Utah.[40]

2. Electronic communications between Mr. Murray, his partners and agents, and third parties regarding Utah, Origins or its officers and shareholders, Oak Equity, and the various transactions between the parties.[41] Origins contends this is relevant to showing the extent to which Defendants "knowing[ly] conducted business in Utah and directed their activities to the forum."[42] Origins further contends this information is "likely to reveal [] [Mr.] Murray, acting for his own interest, abused his position as Chief Strategy Officer of Origins, intended to cause harm to Origins and its officer Seth Bailey, and knew that such harm would be felt in Utah."[43]

3. Mr. Murray's calendars, notes, expenses, and other travel-related documents, communications, and agendas regarding his prior travel to Utah.[44]

4. Origins seeks to take a "single deposition."[45]

Rather than addressing or contesting the specific discovery sought by Origins, Defendants argue jurisdictional discovery is generally unwarranted in this case.[46] Defendants rely on the same facts and arguments presented in their motion to dismiss (as supported by Mr. Murray's

---

[40] (Mot. 3, Doc. No. 8.)

[41] (*Id.* at 3–4; Reply 9, Doc. No. 13.)

[42] (Mot. 4, Doc. No. 8.)

[43] (Reply 10, Doc. No. 13; Mot. 4, Doc. No. 8.)

[44] (Mot. 4, Doc. No. 8; Reply 9, Doc. No. 13.)

[45] (Mot. 2, Doc. No. 8.)

[46] (Opp'n 4, Doc. No. 12.)

declaration) to oppose jurisdictional discovery:[47] that Oak Equity's principal place of business is California, all the LLC members are California residents, Oak Equity does not own property or do business in Utah, and the only contact Oak Equity has with Utah is through the Purchase Option Agreement.[48] Defendants also rely on Mr. Murray's declaration in support of their claims that Mr. Murray is domiciled in California, has never resided in Utah, does not own property in Utah, has never operated, conducted, or engaged in business in Utah, and his only contacts with Utah were two trips to ski areas.[49]

Origins controverts several of these assertions. First, Origins challenges Defendants' position that Oak Equity does not do business in Utah, Mr. Murray does not conduct business in Utah, and Mr. Murray's only contacts with Utah were his two prior ski trips.[50] (Origins submitted documents in support of its arguments regarding the number and extent of contacts Mr. Murray has with Utah.)[51] Origins also challenges the role and relationship created between Oak Equity, Mr. Murray, and Origins via the Purchase Option Agreement.[52] Based on these

---

[47] (*See id.* 4–11.)

[48] (*See* MTD 18, Doc. No. 6.)

[49] (*Id.* at 16–17.)

[50] (*See generally* Reply, Doc. No. 13.)

[51] (*See* Ex. A to Reply, Consulting Agreement between Origins and Melrose Associates LLC, Doc. No. 13-1 (identifying Origins as a Utah company and providing that any disputes regarding the agreement will be resolved in state or federal court in Utah); Ex. C to Reply, Expansion Strategy Overview, Doc. No. 13-3 (identifying Mr. Murray as Origins' Chief Strategy Officer); Ex. D to Reply, Consulting Agreement between Origins and OI Funds LLC, Doc. No. 13-4 (identifying Origins as a Utah company and providing that any disputes regarding the agreement will be resolved in state or federal court in Utah); Ex. E to Reply, Emails between Erik Murray and Mark Schuessler (Sept. 13, 2021), Doc. No. 13-5 (identifying Mr. Murray as "Managing Partner" for OI Funds).)

[52] (*See* Reply 4, Doc. No. 13.)

disputes, the specific categories of discovery Origins identified will help clarify Oak Equity's and Mr. Murray's relationship with and role within Origins, which is relevant to evaluating their contacts with Utah.[53]

Defendants contend Mr. Murray is shielded by the "fiduciary shield/no-imputed-contacts" doctrines.[54] Defendants argue these doctrines "apply to prevent [Mr.] Murray's communications and other conduct on behalf of [Oak Equity] from being attributed to him" because "when a corporate officer, employee or other agent does business or directs contacts toward a forum, those contacts do not count for the agent in a personal jurisdiction analysis precisely because the agent is acting in his capacity as an agent for his corporation employer."[55] Defendants recognize the fiduciary shield doctrine is governed by state law and Utah has not yet adopted this doctrine.[56] Defendants ask the court to predict that Utah "would follow the doctrine" because it "regularly follows and applies the Fletcher treatise" which explicitly

---

[53] *See B&D Dental Corp.*, 2013 U.S. Dist. LEXIS 151749, at *8 (permitting jurisdictional discovery when it would "aid in determining [defendant's] role and level of involvement" in another entity).

[54] (Opp'n 9, Doc. No. 12.)

[55] (*Id.* (citing *Newsome v. Gallacher*, 722 F.3d 1257, 1275–78 (10th Cir. 2013).)

[56] (*Id.* at 9 n.3.)

recognizes the fiduciary shield doctrine.[57] Because this court declines to predict whether Utah will adopt this doctrine, the doctrine does not apply here.[58]

Even if the fiduciary shield doctrine did apply, it may not insulate Mr. Murray from this court's personal jurisdiction where "just as officers can 'incur personal liability by participating in the wrongful activity' of the corporation, officers are not insulated from personal jurisdiction when they participate in [] wrongful activity."[59] Origins acknowledges Mr. Murray's "involvement with the various corporate entities alone may not provide a basis for jurisdiction," but contends that where it alleges Mr. Murray "abused his position to interfere with Origins business," jurisdictional discovery is warranted.[60] This issue is both controverted by the parties and pertinent to the question of personal jurisdiction. Accordingly, jurisdictional discovery is justified and will be permitted.

## CONCLUSION

Where Origins controverts pertinent facts bearing on the question of personal jurisdiction and a better showing is needed, the motion[61] is GRANTED to the extent it seeks jurisdictional

---

[57] (*Id.*)

[58] *Cf. Newsome*, 722 F.3d at 1275 ("We conclude that Oklahoma has not yet adopted the fiduciary shield doctrine, and we refrain from predicting whether it would."). Defendants appear to invoke both the fiduciary shield doctrine and the no-imputed-contacts doctrine, but only make arguments specific to the fiduciary shield doctrine. (*See* Opp'n 8–9, Doc. No. 12); *see also Newsome*, 722 F.3d at 1275 (noting difference between the doctrines). Accordingly, the court considers only the fiduciary shield doctrine.

[59] (*Mower v. Ideal Health Inc.*, No. 2:12-cv-230, 2012 U.S. Dist. LEXIS 159989, at *10, 15–16 (D. Utah Nov. 6, 2012) (unpublished) (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009)).

[60] (Reply 8–9, Doc. No. 13.)

[61] (Doc. No. 8.)

11

discovery. The motion is DENIED as moot to the extent it seeks a stay of the response deadline (in light of the prior order extending the deadline).[62] Origins may seek discovery as specified below.[63]

1. Origins may conduct jurisdictional discovery regarding transactional documents and communications between Mr. Murray and his partners related to their deal with Origins.

2. Origins may conduct jurisdictional discovery regarding electronic communications between Mr. Murray, his partners and agents, and third parties regarding Utah, Origins or its officers and shareholders, Oak Equity, and the various transactions between the parties.

3. Origins may conduct jurisdictional discovery regarding Mr. Murray's calendars, notes, expenses, and other travel related documents, communications, and agendas as it relates to his 2021 trips to Utah.

4. Origins may take a single deposition, restricted to jurisdictional issues.

Origins must complete the above jurisdictional discovery within ninety days of this order, after which it must file its response to Defendants' motion to dismiss within fourteen days.

DATED this 27th day of July, 2023.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[62] (*See* Docket Text Order, Doc. No. 11.)

[63] Where Defendants do not raise challenges to the specific categories of jurisdictional discovery sought, Origins is permitted to conduct the discovery as outlined here.