IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ORIGINS TECH, INC., et al.,<br><br>               Plaintiffs/Counterclaim<br>               Defendants,<br><br>v.<br><br>OAK EQUITY HOLDINGS II, LLC, a<br>California limited liability company, et al.,<br><br>               Defendants/Counterclaim<br>               Plaintiffs. | MEMORANDUM DECISION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART<br>COUNTERCLAIM DEFENDANTS'<br>MOTIONS TO DISMISS<br><br>Case No. 2:23-cv-00326-TS-DAO<br><br>Judge Ted Stewart<br>Magistrate Judge Daphne A. Oberg |

This matter comes before the Court on Plaintiffs/Counterclaim Defendants Seth Bailey's and Sean Miller's Motion to Dismiss Counterclaim[1] and Plaintiff/Counterclaim Defendant Origins Tech, Inc.'s ("Origins") Motion to Dismiss Counterclaim.[2] For the reasons discussed herein, the Court will grant Bailey and Miller's Motion as to the extra-contractual fraudulent inducement counterclaims and grant Origins' Motion as to the breach of contract counterclaim and the injunctive relief counterclaim. The Court will deny the Motions as to the remaining claims.

## I. BACKGROUND

In March 2023, Plaintiff Origins filed this suit in Utah state court against Defendants Oak Equity Holdings II ("Oak Equity II") and LeErik Murray. Subsequently, Defendants removed the

---

[1] Docket No. 117.

[2] Docket No. 118.

matter to this Court.[3] In May 2023, Defendants filed a Motion to Dismiss for Lack of Jurisdiction, Improper Venue, and Failure to State a Claim.[4] Plaintiff sought a stay to conduct jurisdictional discovery. The Court granted the request and permitted Plaintiff ninety days to do so.[5] Origins then filed a Motion for Leave to File First Amended Complaint to include additional parties and claims.[6] The Court granted the Motion and Origins filed an Amended Complaint.[7] The Amended Complaint added Seth Bailey and Sean Miller as Plaintiffs and Oak Holdings, LLC and Melrose Associates, LLC as Defendants. The Amended Complaint also included six additional claims against Defendants.

Defendants counterclaimed against Miller, Bailey, and Origins. In 2024, Plaintiffs Miller and Bailey and Origins filed Motions to Dismiss the counterclaims.[8] Subsequently, Defendants filed a Motion to Amend Counterclaims.[9] The Court granted the Motion to Amend and denied the Motions to Dismiss as moot.[10] Defendants filed their Amended Counterclaim[11] and in turn, Plaintiffs filed the present Motions to Dismiss.

Plaintiff Origins owns interests in cannabis companies operating in Washington, Oklahoma, Maine, and California.[12] Plaintiffs Miller and Bailey are controlling shareholders of

---

[3] Docket No. 1.

[4] Docket No. 6.

[5] Docket No. 15.

[6] Docket No. 16.

[7] Docket No. 30.

[8] Docket Nos. 59, 60.

[9] Docket No. 75.

[10] Docket No. 104.

[11] Docket No. 109.

[12] *Id.* ¶ 17.

Origins, through Andorra Holdings, LLC, and directly. Through a series of agreements, Origins acquired Oak Equity Holdings, LLC ("Oak Equity"), which was previously owned by Defendant Murray, and non-parties Sarah Sanger and John Underwood. Defendant Murray is a member of Defendants Oak Holdings, LLC, Oak Equity II, and Melrose Associates, LLC.

This case centers around a number of agreements that Plaintiffs and Defendants entered into in April 2021. At issue here are the Stock Purchase Agreement and the Promissory Note.

On April 27, 2021, Origins entered into a Stock Purchase Agreement with Defendant Murray and non-parties Sanger and Underwood. Pursuant to this agreement, Origins acquired 100% interest in Oak Equity and in exchange, Murray, Sanger, and Underwood collectively received a total of 888,889 shares of Origins' stock at $5.625 per share for an aggregate purchase price of $5,000,000.00.[13] Oak Equity has membership interests in four cannabis businesses: Market Street Equity, LLC, Lake Merritt Equity, LLC, Lombard Street Equity, LLC, and Oaklyn Legacy Holdings, LLC, and owns the IP of the "Rose Mary Jane" brand. Pursuant to the Stock Purchase Agreement, the cannabis businesses are now subsidiaries of Origins.

On April 5, 2021, prior to the Stock Purchase Agreement in which Oak Equity was purchased by Origins, Oak Equity executed and delivered an Amended Promissory Note to Oak Holdings.[14] Pursuant to the Note, Oak Equity agreed to pay Oak Holdings the principal sum of $316,749.81 plus interest.[15] On April 29, 2021, Oak Equity repaid $150,000.00 of that sum. Defendants assert in their Counterclaim that Origins as now owner of Oak Equity breached its obligations under this note and still owes $166,749.81 plus interest and attorneys' fees.[16]

---

[13] Docket No. 109-3 ¶ 1.

[14] Docket No. 109-2.

[15] *Id.* at 2.

[16] Docket No. 109 ¶ 92.

Plaintiffs filed their Amended Complaint on January 2, 2024. The Amended Complaint alleges the following claims against Defendants:

1. Promissory Estoppel, Origins against Oak Equity II.
2. Contract Implied in Fact, Origins against Oak Equity II.
3. Breach of Contract (Purchase Option Agreement), Origins against Oak Equity II.
4. Breach of Implied Covenant of Good Faith and Fair Dealing (Purchase Option Agreement), Origins against Oak Equity II.
5. Tortious Interference, Origins, Miller, and Bailey against Murray.
6. Breach of Contract (Consulting Agreement) or in the alternate Contract Implied in Fact, Origins against Murray and Melrose.
7. Breach of Implied Covenant of Good Faith and Fair Dealing (Consulting Agreement), Origins against Murray and Melrose.
8. Fraudulent Inducement (Indemnification Agreement), Origins against Murray and Oak Holdings.
9. Defamation Per Se, Miller against Murray.
10. Defamation Per Se, Bailey against Murray.
11. Breach of Contract (Stock Purchase Agreement), Origins against Murray.
12. Breach of Implied Covenant of Good Faith and Fair Dealing (Stock Purchase Agreement), Origins against Murray.

Defendants' Amended Counterclaim asserts the following claims against Plaintiffs:

1. Breach of Fiduciary Duty, by Origins against Miller and Bailey.
2. Conversion, by Origins against Miller and Bailey.
3. Fraudulent Inducement, by Murray against Miller and Bailey.
4. Equitable Accounting, by Murray against Origins.
5. Breach of Stock Purchase Agreement, by Murray against Origins.
6. Writ of Attachment, by Oak Holdings against Oak Equity.
7. Injunctive Relief, by Murray *against Origins*.

Bailey and Miller's Motion seeks to dismiss the breach of fiduciary duty, conversion, and fraudulent inducement counterclaims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[17] Origins moves to dismiss the breach of stock purchase agreement, equitable accounting, and injunctive relief counterclaims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[18] Having fully reviewed the

---

[17] Docket No. 117.

[18] Docket No. 118.

parties' briefing and finding that oral argument would not be materially helpful,[19] the Court now rules on the Motions to Dismiss.

## II. ANALYSIS

### A. Bailey and Miller's Motion to Dismiss

### 1. Derivative Claims

Bailey and Miller argue that the derivative counterclaims for breach of fiduciary duty and conversion should be dismissed under Fed. R. Civ. P. 23.1 for lack of verification, Rule 12(b)(1) for lack of standing, and Rule 12(b)(6) for failure to state a claim. The Court will address each argument below.

### a. Rule 23.1 Verification

Bailey and Miller argue that the derivative claims should be dismissed because Defendants did not attach the required verification to the Amended Counterclaim pursuant to Fed. R. Civ. P. 23.1.[20]

"Derivative actions empower shareholders to enforce a corporate cause of action against officers, directors, and third parties."[21] In a derivative suit, "[w]hether the complaint's particular allegations suffice depends upon the substantive law of the state in which the entity is incorporated—here, Delaware."[22]

Rule 23.1 requires that in a suit brought by a shareholder on behalf of a corporation, the complaint must be verified and must also:

---

[19] *See* DUCivR 7-1(g).

[20] Docket No. 117, at 4–5.

[21] *City of Cambridge Ret. Sys. v. Ersek*, 921 F.3d 912, 918 (10th Cir. 2019) (internal quotation marks and citation omitted)(emphasis omitted).

[22] *Id.*

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

(2) allege that the action is not a collusive one or to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Plaintiffs assert that Defendants failed to file the verification to the Amended Counterclaim and therefore the derivative claims must be dismissed for failure to comply with Rule 23.1. Defendants argue that the verification page was omitted due to administrative oversight.[23] The verification was filed with the proposed Amended Counterclaim when the Court previously reviewed Defendants' Motion for Leave to Amend and Defendants later filed the verification via a Notice of Errata.[24] "[W]here failure to verify appears to be a mere oversight and the [d]efendant has opposed the [c]omplaint with vigor, leave should be granted to the [p]laintiff to amend his [c]omplaint."[25] Here, both Plaintiffs and the Court have had the opportunity to review the verification since it has twice been filed with the Court. Accordingly, the Court will deny the Motion on this basis and will not require Defendants to amend their counterclaim.

b. "Standing"

Bailey and Miller assert that Murray lacks standing to pursue his derivative claims because he was not a shareholder at the time of the alleged conduct and, even if he was, any

---

[23] Docket No. 130, at 5.

[24] Docket No. 131.

[25] *Walden v. Elrod*, 72 F.R.D. 5, 12 (W.D. Okla. 1976) (citation omitted).

injury suffered is not redressable by the Court because Origins' corporate charter waives personal, monetary liability for fiduciary duty claims.[26]

Bailey and Miller argue that because the alleged breaches of fiduciary duty occurred prior to Murray becoming a shareholder in Origins via the Stock Purchase Agreement, he lacks standing to assert the derivative claim under Rule 23.1.

Rule 23.1(b)(1) requires that a derivative complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Murray asserts that the first basis applies here because he was a minority shareholder prior to the Stock Purchase Agreement and at the time of the allegations. The Amended Complaint asserts that "[a]t all relevant times herein, Murray owned and continues to own a minority share of stock of Origins."[27] The Court finds that under the pleading standard this is sufficient to satisfy ownership under Rule 23.1.

Turning to the second argument, Bailey and Miller argue because the Incorporation Agreement waives monetary liability for breach of fiduciary duties, any decision by this Court could not redress any alleged injury and therefore, Murray lacks standing to pursue the claim. Because this argument is based on an affirmative defense under 8 Del. C. § 102(b)(7),[28] the Court will address this argument below under Rule 12(b)(6) rather than under Rule 12(b)(1).

c. 12(b)(6)

Bailey and Miller challenge Murray's claims for breach of the fiduciary duties of care and loyalty and conversion for failure to state a claim.

---

[26] Docket No. 117, at 6–11.

[27] Docket No. 109 ¶ 9.

[28] *See Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999) (citations omitted).

When evaluating a complaint under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[29] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[30] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[31] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[32]

"Directors of a Delaware corporation owe two fiduciary duties—loyalty and care."[33] To state a claim for breach of fiduciary duty, the complaint must plead "(i) the existence of a fiduciary duty that the defendant owes to the plaintiff and (ii) a breach of that duty."[34] Corporate directors and officers owe fiduciary duties of care, loyalty, and duty to act in good faith to shareholders and the corporation.[35]

i. Breach of fiduciary duty

aa. Duty of care

Bailey and Miller assert that the Counterclaim contains only conclusory assertions that are insufficient to state a claim. "The fiduciary duty of due care requires that directors of a

---

[29] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[32] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[33] *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 842 (Del. Ch. 2022) (citing *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).

[34] *Id.* at 840–41.

[35] *KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2012).

Delaware corporation both: (1) use that amount of care which [an] ordinary and prudent [person] would use in similar circumstances; and (2) consider all material information reasonably available."[36] To prove a breach of the duty of care, a plaintiff must demonstrate gross negligence.[37] Delaware corporate law defines gross negligence as "indifference to duty amounting to recklessness."[38]

The Counterclaim alleges that Bailey and Miller misappropriated Origins funds for their own personal benefit and put Origins at risk by illegally operating assets in Washington.[39] The Court finds that this sufficiently alleges gross negligence and therefore a breach of the duty of care.

### bb.  Duty of loyalty

"[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[40] "A duty of loyalty claim must

---

[36] *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 568 (Bankr. D. Del. 2008) (internal quotation marks and citation omitted); *see also Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 130 (Del. 1963); *In re Walt Disney Co. Derivative. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005).

[37] *See In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651 (Del. Ch. 2008) (citation omitted).

[38] *Zimmerman v. Crothall*, No. 6001-VCP, 2012 WL 707238, at *6 (Del. Ch. Mar. 5, 2012) (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. Civ.A. 762-N, 2005 WL 2130607, at *4 (Del. Ch. Aug. 26, 2005)(emphasis omitted)).

[39] Docket No. 109 ¶ 62.

[40] *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009) (internal quotation marks and citation omitted); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

allege that there is a 'misuse of power over corporate property or processes in order to benefit a director rather than advance corporate purposes.'"[41]

The duty of loyalty also requires "a subsidiary element" to act in good faith.[42] "Most basically, the duty of loyalty proscribes a fiduciary from any means of misappropriation of assets entrusted to his management and supervision."[43]

In the context of the duty of loyalty, "[c]lassic examples of a director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally."[44] "Although directors are entitled to a presumption that they were faithful in carrying out their fiduciary duties, a plaintiff may plead a violation of the duty of loyalty by plausibly alleging a conscious disregard for the director's responsibilities."[45]

Defendants' counterclaim pleads that Miller and Bailey "converted company assets . . . to a shell corporation that they are associated with," that they "received personal benefit from Origins' funds," Origins transferred "tech components" to an entity owned by Bailey without fair compensation, and "leverage[d] Origins' assets for their own personal gain."[46] The Court finds that these assertions are sufficient to plead a breach of the duty of loyalty claim.

---

[41] *KDW Restructuring & Liquidation Servs.*, 874 F. Supp. 2d at 222 (quoting *Dweck v. Nasser*, No. 1353-VCL, 2012 WL 161590, at *12 (Del. Ch. Jan. 18, 2012)).

[42] *Stone*, 911 A.2d at 370.

[43] *U.S. West, Inc. v. Time Warner Inc.*, No. 14555, 1996 WL 307445, at *21 (Del. Ch. June 6, 1996).

[44] *Cede & Co.*, 643 A.3d at 362.

[45] *Binn v. Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *15 (S.D.N.Y. July 13, 2020) (internal quotation marks and citations omitted).

[46] Docket No. 109 ¶¶ 54, 62.

cc.  Business judgment rule

Bailey and Miller challenge the breach of fiduciary duty claims under the business judgment rule. Under Delaware law, there "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company."[47] However, a showing of breach of the duty of care or loyalty "in connection with a challenged transaction may rebut this presumption[,]"[48] for example for a breach that involves bad faith.[49]

The Delaware Supreme Court has identified the following examples of bad faith:

where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of known duty to act, demonstrating a conscious disregard for his duties. There may be other examples of bad faith yet to be proven or alleged, but these three are the most salient.[50]

Bailey and Miller argue that the allegations in the Counterclaim fail to allege facts sufficient to rebut the presumption and to show the decision lacks any rationally conceivable basis.[51] However, the Counterclaim alleges that Bailey and Miller acted in bad faith by acting in their own self-interest and allege specific actions. Based on the guidance of the Delaware Supreme Court defining bad faith, the Court finds that Defendants have alleged sufficient facts to rebut the business judgment rule presumption at this stage.

---

[47] *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007) (internal quotation marks and citation omitted).

[48] *Id.*

[49] *Stone*, 911 A.2d at 370.

[50] *Id.* at 369 (internal quotation marks and citation omitted).

[51] Docket No. 133, at 8.

dd.  Exculpatory clause

Under Delaware law, parties may contractually eliminate personal liability of a director for monetary damages for a breach of fiduciary duty.[52] Plaintiffs assert that the exculpatory clause in Origins' Amended Restated Certificate of Incorporation shields Miller and Bailey from liability for breaches of fiduciary duties. Origins' Amended Restated Certificate of Incorporation states that a director of Origins "shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."[53]

"[T]he shield from liability provided by a certificate of incorporation provision adopted pursuant to 8 Del. C. § 102(b)(7) is in the nature of an affirmative defense."[54] A § 102(b)(7) defense may be raised in a 12(b)(6) motion as was done here, however, since it involves consideration of a matter outside the pleading, "the motion will be converted, by clear force of the pleading rules, into a motion for summary judgment."[55]

Delaware General Corporate Law does not allow provisions eliminating or limiting liability in five circumstances:[56] (1) "[a] director or officer for any breach of the director's or officer's duty of loyalty to the corporation or shareholders"; (2) "[a] director or officer for acts or omissions not in good faith or which involve intentional conduct or a knowing violation of law"; (3) a director who makes unlawful payment or dividend or unlawful stock purchase; (4) "[a]

---

[52] Del. Code Ann. tit. 8 § 102(b)(7).

[53] Docket No. 117-1, Art. IX.

[54] *Emerald Partners*, 726 A.2d at 1223 (citations omitted).

[55] *Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del. 2001).

[56] Del. Code Ann. tit. 8 § 102(b)(7).

director or officer for any transaction from which the director or officer derived an improper personal benefit"; or (5) "[a]n officer in any action by or in the right of the corporation."[57]

"[W]here the factual basis for a claim *solely* implicates a violation of the duty of care, th[e] [Supreme Court of Delaware] has indicated that the protections of such a charter provision may properly be invoked and applied."[58] Here as discussed above, the Counterclaim states plausible claims for breach of both the duty of care and of loyalty and alleges bad faith, accordingly, the Court declines to dismiss the claims at this juncture based on the exculpatory clause.

ee.  Additional arguments

In addition to those discussed above, Plaintiffs assert two other arguments as to why the Court should dismiss the breach of fiduciary duty claims.

First, Plaintiffs argue that the allegations related to the subsidiary stores cannot form the basis for the breach of fiduciary duty claim because they overlap with the breach of contract claim.[59] Murray responds that this argument fails because first, there is no contract between Murray and Bailey and Miller and second, because the allegation is not that Bailey and Miller breached the contract, but also that they mismanaged the company,  resulting in Origins breaching its own contractual obligations.

"It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract . . . any fiduciary duty arising out of the same facts that underlie

---

[57] *Id.*

[58] *Emerald Partners*, 726 A.2d at 1224 (citing *Arnold v. Soc'y for Sav. Bancorp.*, 650 A.2d 1270, 1288 (Del. 1994); *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996)).

[59] Docket No. 133, at 7.

the contract obligation will be foreclosed as superfluous."[60] "This bootstrapping case law only requires dismissal where a fiduciary claim wholly overlaps with a concurrent breach of contract claim."[61] Accordingly, "courts must dismiss such breach of fiduciary duty claims 'where the two claims overlap completely.'"[62]

As discussed in further detail below, the Court will dismiss the breach of contract claim, but even if the claim survived, it is not clear that these claims overlap completely. The breach of fiduciary duty allegation is that Bailey and Miller "mismanage[ed] Origins' holdings in Lake Merritt, Lombard Street, Oaklyn Legacy, and Market Street in direct contravention of the requirements of the Agreement."[63] Whereas the breach of contract claim asserts that "Origins has breached its obligations . . . of the Agreement by failing to continue the current business plan of Oak Equity."[64] The breach of fiduciary duty claim involves an allegation of mismanagement while the contract claim does not. Further, the breach of contract claim is asserted against Origins, not Bailey and Miller. Accordingly, the Court will not dismiss the claim based on this argument.

Next, Plaintiffs argue that Delaware law does not recognize the fiduciary duty claims as a matter of law because "a parent corporation does not owe fiduciary duties to its wholly-owned subsidiaries."[65] Plaintiffs erroneously assert that Murray's breach of fiduciary duty claim relies

---

[60] *In re MultiPlan Corp. S'holder Litig.*, 268 A.3d 784, 805 (Del. Ch. 2022) (internal quotation marks and citations omitted).

[61] *Backer v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 109 (Del. 2021).

[62] *In re MultiPlan*, 268 A.3d at 805 (quoting *Backer*, 246 A.3d at 109).

[63] Docket No. 109 ¶ 62.

[64] *Id.* ¶ 93.

[65] Docket No. 117, at 13 (citing *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191 (Del. Ch. 2006)).

on "'the notion that the directors of a corporate parent—[Origins]—breached fiduciary duties owed to the parent's wholly-owned subsidiary—[Oak Equity Holdings and the four stores].'"[66] However, this is a derivative claim asserted by the shareholders of Origins—not asserted by the subsidiary company—against Bailey and Miller as directors and officers. While the claim involves actions concerning Oak Equity Holdings and the four stores, it is not asserted on behalf of these subsidiaries and the Court will not dismiss the claim based on this argument.

### ii. Conversion

Bailey and Miller assert that the Counterclaim fails to state a claim for conversion. "Any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it, is a conversion."[67] "[T]he necessary elements for a conversion under Delaware law are that a plaintiff had a property interest in the converted goods; the plaintiff had a right to possession of the goods; and that the plaintiff sustained damages."[68] Generally, Delaware law does not recognize conversion claims for conversion of money.[69]

Here, the Counterclaim alleges that Miller and Bailey exercised dominion and control over and improperly used Origins' assets.[70] While sparse, this sufficiently pleads a claim for conversion and the Court will not dismiss it.

### 2. Fraudulent Inducement Claim

---

[66] *Id.* (quoting *Trenwick*, 906 A.2d at 191).

[67] *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933).

[68] *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988)

[69] *Id.*

[70] Docket No. 109 ¶ 70.

Bailey and Miller assert that Murray's fraudulent inducement claim fails because (1) it is not pleaded with sufficient particularity under Fed. R. Civ. P. 9, and (2) the Stock Purchase Agreement contained an anti-reliance clause.

Federal jurisdiction in this case is based on diversity of citizenship. "A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state."[71] Because this Court's forum state is Utah, the Court applies Utah's choice of law principles. Where a contract contains a choice-of-law provision, Utah law applies the substantive law of the chosen jurisdiction.[72] The Stock Purchase Agreement contains a Delaware choice of law provision.[73] The fraudulent inducement claim involves interpretation of the Stock Purchase Agreement, accordingly, the Court will apply Delaware law to this claim.

a. Rule 9 particularity

Bailey and Miller assert that Murray's fraudulent inducement claim should be dismissed because it fails to adhere to Fed. R. Civ. P. 9's heightened pleading standards.

To assert a claim for fraudulent inducement under Delaware law, a complaint must plead:

(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; (5) damage to the plaintiff as a result of such reliance.[74]

---

[71] *O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222, 1225 (10th Cir. 2002) (citing *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994)).

[72] *1600 Barberry Lane 8 LLC v. Cottonwood Residential O.P. LP*, 2021 UT 15, ¶ 23, 493 P.3d 580.

[73] Docket No. 109-3 ¶ 22.

[74] *Stephenson v. Capano Dev., Inc.*, 462 A. 2d 1069, 1074 (Del. Super. 1983); *Gaffin v. Teledyne, Inc.*, 611 A. 2d 467, 472 (Del. 1992).

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."[75] While Rule 9(b), "falls shorts of requiring every material detail of the fraud such as date, location, and time" it requires some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."[76]

Defendants' Counterclaim alleges that Murray and Bailey made material misrepresentations to induce Murray to sign the Stock Purchase Agreement by: (1) falsely representing that Origins was valued at $45 million; (2) using a company owned by Bailey to prepare a false valuation of Origins; (3) falsely representing that Origins' stores in Washington were legally compliant; (4) intentionally leading Murray to believe that Miller and Bailey would personally fund outstanding financial commitments of Origins if Origins did not have the funds; and (5) representing that Origins would continue the current business plan of Oak Equity as presented to Origins.[77]

While using Bailey's company to prepare an allegedly false valuation is separately listed as a misrepresentation in the Counterclaim, it appears to support the alleged misrepresentation of the $45 million valuation and the Court will fold it into that misrepresentation for analysis. The misrepresentations about the valuation and the business plan are contained in the contract. "When a party sues based on a written representation in a contract . . . it is relatively easy to

---

[75] *See Duncan v. Vantage Corp.*, No. 18-288 (MN), 2019 WL 1349497, at *10 (D. Del. Mar. 26, 2019); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Fed. R. Civ. P. 9(b) requires plaintiffs to plead circumstances of the alleged fraud with particularity to ensure that defendants are placed on noticed of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud.") (internal quotation marks and citation omitted).

[76] *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (internal quotation marks and citation omitted).

[77] Docket No. 109 ¶ 77.

plead a particularized claim of fraud."[78] The where and when is readily identified because it was in the contract and likewise, what Bailey and Miller gained is readily identified—to induce Murray to enter the contract.[79] The Court finds that these misrepresentations are sufficiently particular under Rule 9.

The remaining misrepresentations[80] are extra-contractual and although they satisfy Rule 9 particularity, as discussed below, they are barred by the anti-reliance provisions of the Stock Purchase Agreement so the Court will not discuss them in depth here.

b. Anti-reliance

Bailey and Miller also assert that the fraudulent inducement counterclaim is barred by the anti-reliance provisions included in the Stock Purchase Agreement.

"Delaware law enforces clauses that identify the specific information on which a party has relied and which foreclose reliance on other information."[81] "[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim."[82]

The Stock Purchase Agreement contains the following language:

- The Purchasers have made such investigation of the facts pertaining to this Agreement, and all of the matters pertaining hereto, as they deem necessary. The Purchasers have received such financial information from the Corporation as they deem necessary to consider entering into this Agreement.[83]

---

[78] *See Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015).

[79] *Id.*

[80] Docket No. 109 ¶¶ 48, 49.

[81] *Prairie Cap. III, L.P*, 132 A.3d at 50 (citing *RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 118–19 (Del. 2012)).

[82] *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006).

[83] Docket No. 109-3 ¶ 5(m).

- The Purchasers have conducted their own investigation and determination of the value of the securities they will receive under this Agreement.[84]
- Except as expressly provided herein, no person has made any statement or representation to the Purchasers that the Purchasers are relying on in entering into this Agreement.[85]
- This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof.[86]

Murray argues that these provisions are not as robust, clear, and unambiguous as those found by Delaware courts to limit fraudulent inducement claims and that, since he seeks redress for fraud within the contract, the provisions do not apply.

Bailey and Miller cite to *Prairie Capital, L.P. v. Double E Holding Corp.*,[87] to support their argument that the provisions contained in the Stock Purchase Agreement are sufficient to bar the fraudulent inducement claim. In *Prairie*, the Delaware Court of Chancery concluded that the stock purchase agreement provisions stating that the representations in the contract were the exclusive representations along with an integration clause precluded fraud claims based on extra-contractual misrepresentations.[88] In a more recent case, the Delaware Court of Chancery concluded that where an agreement did not contain a provision in which the "[b]uyer did not affirmatively acknowledge any disclaimer by [s]eller, or otherwise specifically establish the universe of information on which [b]uyer did or did not rely," the buyer reasonably relied on the extra-contractual representations.[89]

---

[84] *Id.* ¶ 5(n).

[85] *Id.* ¶ 5(o)

[86] *Id.* ¶ 27.

[87] 132 A.3d 35 (Del. Ch. 2015).

[88] *Id.* at 49–50.

[89] *Labyrinth, Inc. v. Urich*, No. 2023-0327-MTZ, 2024 WL 295996, at * 18 (Del. Ch. Jan. 26, 2024).

Here, the Stock Purchase Agreement contains a clear exclusive representation statement that "except as expressly provided herein, no person has made any statement or representation to Purchasers that the Purchasers are relying on in entering into this Agreement."[90] This statement, coupled with the representations of fact in the Agreement, establish the universe of information on which Murray relied. Additionally, the integration clause supports a finding that fraudulent inducement claims based on extra-contractual misrepresentations are barred under Delaware law. Therefore, the claims based on extra-contractual misrepresentations are barred and the Court will dismiss the claims based on these misrepresentations.

Turning to the alleged contractual misrepresentations, Murray asserts that the exclusive representation and integration clauses cannot insulate Bailey and Miller from misrepresentations contained in the contract itself. To support this position, Murray cites to *Abry Partners V. L.P. v. F&W Acquisition LLC*[91] and *Online HealthNow, Inc. v. CIP OCL Invs., LLC*.[92] In those cases, the Chancery Court of Delaware reiterated that "where a [party] seeks to hold a defendant liable for alleged lies made *outside* the contract, a party's clear contractual promise disclaiming reliance on such extra-contractual statements will bar that claim."[93] However, "[w]here . . . an agreement purports to limit liability for a lie made within the contract itself, and the parties *know* of the lie, such parties cannot skirt liability through contractual limits within the very contract they procured by fraud."[94]

---

[90] Docket No. 109-3 ¶ 5(o).

[91] 891 A.2d 1032 (Del. Ch. 2006).

[92] 2020-0654-JRS, 2021 WL 3557857 (Del Ch. Aug. 12, 2021).

[93] *Id.* at *12 (citing *Abry Partners*, 891 A.2d at 1057–58).

[94] *Id.* (citing *Abry Partners*, 891 A.2d at 1063).

Murray asserts that the misrepresentations concerning the $45 million valuation and business plan were made in the contract itself and that Miller and Bailey knew that these statements were false. The exclusive representation and integration clauses in the Stock Purchase Agreement do not bar the fraudulent inducement claims based on the alleged contractual misrepresentations and accordingly, the Court will deny the Motion to Dismiss based on these allegations.

B. Origins' Motion to Dismiss

1. Breach of Contract Claim

Origins challenges Murray's breach of contract claim under Fed. R. Civ. P. 12 (b)(1) for lack of standing and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

As above, the Court will apply Delaware law to the breach of contract claims as the Stock Purchase Agreement at issue contains a Delaware choice-of-law provision.[95]

Murray asserts a breach of contract claim against Origins. The claim asserts that Origins breached paragraphs 16 and 17 of the Stock Purchase Agreement. Origins moves to dismiss the claim under Fed. R. Civ. P. 12(b)(1) asserting that Murray lacks standing because he has no personal interest in the obligations in paragraphs 16 and 17.[96] Origins also moves to dismiss under Rule 12(b)(6) on largely the same basis.[97]

---

[95] Docket No. 109-3 ¶ 22.

[96] Docket No. 118, at 15.

[97] *Id.* at 9, 12 ("Notably absent from Paragraph 16 is any stated obligations owed to Murray" and "Murray's claim [under paragraph 17] fails because he has identified no contract that exists between him and Origins that includes obligations on which he now sues.").

"[A] party's standing implicates subject matter jurisdiction"[98] and dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction. However, "[i]f the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56."[99]

Here, because Plaintiff's argument regarding standing is intertwined with the merits of the case, the Court will address Plaintiff's challenge under Rule 12(b)(6).

To state a claim for breach of contract a party must plead (1) the existence of a contract, (2) breach of an obligation imposed by that contract, (3) and resultant damage to the plaintiff.[100]

Paragraph 16 of the Stock Purchase Agreement states:

> After the Closing, the Corporation shall continue the current business plan of Oak Equity as presented to the Corporation, including funding the pursuit and opening of the four identified stores and the honoring of all social equity partner commitments, consistent with budgets approved by the Corporation's Board of Directors.[101]

Murray asserts in his counterclaim that Origins breached paragraph 16 by failing to continue Oak Equity Holdings' business plan.[102] Origins asserts that this paragraph does not create an obligation to Murray and the Counterclaim fails to allege any injury or damages he

---

[98] *Roco, Inc. v. EOG Res., Inc.*, No. 14-1065-JRA-KMH, 2014 WL 5430251, at *2–3 (D. Kan. Oct. 24, 2014); *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224–25 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction.").

[99] *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) (citation omitted); *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1285–86 (Del. 2007) ("[W]here . . . the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1).").

[100] *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003).

[101] Docket No. 109-3 ¶ 16.

[102] Docket No. 109 ¶ 93.

suffered as a result of any alleged breach.[103] The Court agrees. Murray fails to allege that he was injured as a result of Origins failing to follow the business plan and paragraph 16 does not create an obligation to Murray.

Paragraph 17 of the Stock Purchase Agreement states:

The parties acknowledge that Oak Equity has issued a promissory note to Oak Holdings with a balance of $316,749.81. Oak Equity will pay off the balance of the promissory note by paying $150,000.00 at the Closing and paying the remaining balance on the one-year anniversary of the Closing, and the Corporation agrees to provide the funding for such payments.[104]

Murray asserts that Origins breached paragraph 17 by failing to provide the funding to Oak Equity for payment of the outstanding balance of $166,749.81 to Oak Holdings, LLC. As explained above, Oak Holdings, LLC is owned in part by Murray. While this paragraph creates an obligation for Origins to provide the approximately $166,000 in funds to Oak Equity to pay off Oak Holdings, Murray fails to allege injury to himself. It is true that he partly controls Oak Holdings, LLC, yet he is not asserting the claim on behalf of Oak Holdings, but clearly on behalf of himself. While Origins agrees to provide the funding to Oak Equity for the payments from Oak Equity to Oak Holdings, there is not a separate obligation created for Origins to pay Oak Holdings. Murray therefore fails to plead any obligation to either Oak Holdings or himself on behalf of Origins and fails to plead an injury to him personally. Accordingly, the Court will dismiss the breach of contract claim.

2. "Dependent" Claims

Origins argues that Defendants' fourth cause of action for equitable accounting should be dismissed because the counterclaims against Bailey, Miller, and Origins fail and therefore any

---

[103] Docket No. 118, at 9.

[104] Docket No. 109-3 ¶ 17.

claim to determine the extent of Defendants' damages fails.[105] As discussed above, the Court will deny the Motions to Dismiss in part and therefore Defendants may still be entitled to damages. Further, the Counterclaim states a plausible claim for equitable accounting. "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."[106] Defendants "must also be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."[107] The Counterclaim pleads that "Origins' accounts are of such a complex nature that an accounting is necessary" and there is "no adequate remedy at law."[108] Therefore, the Court will deny the Motion as to the equitable accounting claim.

Origins also asserts that Defendants' eighth cause of action for injunctive relief[109] should be dismissed because as demonstrated in both Origins' and Bailey and Miller's Motions, there is not a likelihood Murray will prevail on the merits of his claim.[110] "[A] preliminary injunction is a remedy, not an independent cause of action."[111] "Injunctive relief is available as a remedy only where a party prevails on a separate legal theory."[112] The Court will not dismiss the injunctive relief counterclaim pursuant to Plaintiff's arguments but instead because it is well-settled that

---

[105] Docket No. 118, at 16.

[106] *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).

[107] *Id.* (internal quotation marks and citation omitted).

[108] Docket No. 109 ¶¶ 85–86.

[109] *Id.* ¶¶ 106–11.

[110] Docket No. 118, at 16–17.

[111] *Firehole River Cap., LLC v. Supurva Healthcare Grp., Inc.*, No. 2:21-cv-00153-DBB, 2021 WL 4291087, at *7 (D. Utah Sept. 21, 2021) (citation omitted).

[112] *Id.* (citation omitted).

such a claim is a remedy and not a cause of action. Defendants may still pursue injunction as a remedy if they prevail on one or more of their counterclaims.

III. CONCLUSION

It is therefore

ORDERED that Bailey and Miller's Motion to Dismiss (Docket No. 117) is GRANTED in part and DENIED in part; it is further

ORDERED that Origins' Motion to Dismiss (Docket No. 118) is GRANTED in part and DENIED in part.

DATED August 26, 2025.

BY THE COURT:

TED STEWART
United States District Judge